**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MITCH C., [1]

       Plaintiff,

      v.

FRANK BISIGNANO,[2]
Commissioner of Social Security,

      Defendant.

Case No. 5:24-cv-02147-MAA

**MEMORANDUM DECISION AND ORDER REVERSING DECISION OF THE COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

## I.    INTRODUCTION

On October 9, 2024, Plaintiff Mitch C. ("Plaintiff") filed a Complaint seeking review of Defendant Commissioner of Social Security's ("Commissioner" or "Defendant") final decision denying his application for supplemental security income under Title XVI of the Social Security Act.  (Compl., ECF No. 1.)  Pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of a United States

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Frank Bisignano became Commissioner of Social Security on May 6, 2025. Under Federal Rule of Civil Procedure 25(d), he is automatically substituted for Carolyn Colvin as Defendant in this suit.

Magistrate Judge.  (ECF Nos. 6, 9.)  On December 9, 2024, Defendant filed an Answer (Answer, ECF No. 11) and Certified Administrative Record ("AR," ECF Nos. 11-1–11-30).  On January 7, 2025, Plaintiff filed a Brief.  (Pl.'s Br., ECF No. 13.)  On March 6, 2025, Defendant filed a Response Brief.  (Def.'s Br., ECF No. 17.)  On March 18, 2025, Plaintiff filed a Reply Brief.  (Pl.'s Reply Br., ECF No. 18.)  This matter is fully briefed and ready for decision.

The Court deems the matter appropriate for resolution without oral argument.  *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  For the reasons discussed below, the Court reverses the decision of the Commissioner and remands the matter for further administrative proceedings.

## II.   SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On February 7, 2022, Plaintiff filed an application alleging disability beginning November 1, 2019.  (AR 231–240.) [3]  The Commissioner denied this claim initially on August 1, 2022 (*id.* at 56–80), and upon reconsideration on November 3, 2022 (*id.* at 81–99).  On December 6, 2022, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.* at 120.)

ALJ Amy Chao conducted a video teleconference hearing on August 8, 2023.  (*Id.* at 35–55.)  The ALJ heard testimony from Plaintiff (*id.* at 39–50), who was represented by counsel, and from an impartial vocational expert (*id.* at 50–53).  On December 6, 2023, after making findings under the Commissioner's five-step evaluation process, the ALJ issued an unfavorable decision.  (*Id.* at 14–34.)

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 7, 2022, the application date.  (*Id.* at 19 ¶ 1.)  At step two, the ALJ found that Plaintiff had the following severe impairments:

---

[3] Citations to the Administrative Record are to the AR number.  Pinpoint citations to other docketed documents are to the page numbers in the CM/ECF-generated headers.

"schizoaffective disorder, bipolar type; major depressive disorder; and substance addiction disorders (drugs) with stimulant induced psychosis, in reported remission." (*Id.* at 20 ¶ 2.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the agency's listed impairments.  (*Id.* at 20 ¶ 3.)  Next, the ALJ found that Plaintiff had the following Residual Functional Capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:  understand, remember, and carry out simple instructions; unable to perform work requiring a specific production rate, such as assembly line work or work that requires hourly quotas; occasionally interact with coworkers, but not tandem or teamwork; no interactions with the public; occasionally deal with changes in a routine work setting; and avoid concentrated exposure to moving mechanical parts and high exposed places.

(*Id.* at 22 ¶ 4.)

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work as an "outside deliverer."  (*Id.* at 27 ¶ 5.)  The ALJ classified Plaintiff as a younger individual on the date the application was filed.  (*Id.* at 28 ¶ 6.)  The ALJ categorized Plaintiff as having a limited education.  (*Id.* at 28 ¶ 7.)  The ALJ concluded the "[t]ransferability of job skills is not an issue because the claimant's past relevant work is unskilled."  (*Id.* at 28 ¶ 8.)  At step five, the ALJ noted that the vocational expert testified that an individual of Plaintiff's age, education, work experience, and residual functional capacity could perform occupations such as: "hospital cleaner," with 34,771 jobs; "laundry worker," with 209,330 jobs; and "hand packer," with 71,409 jobs.  (*Id.* at 28–29 ¶ 9.)  The ALJ concluded that, "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to

1    other work that exists in significant numbers in the national economy." (*Id.* at

2    29 ¶ 9.)  Accordingly, the ALJ concluded Plaintiff was not disabled, as defined by

3    the Social Security Act, since February 7, 2022.  (*Id.* 29 ¶ 10.)

4    　　　　On August 30, 2024, the Appeals Council denied Plaintiff's request for

5    review.  (*Id.* at 1–6.)  Plaintiff now seeks judicial review of the ALJ's decision,

6    which stands as the final decision of the Commissioner.  *See* 42 U.S.C. § 405(g).

7

8    **III.    STANDARD OF REVIEW**

9    　　　　Pursuant to 42 U.S.C. Section 405(g), the Court reviews the Commissioner's

10    final decision to determine whether the Commissioner's "decision to deny

11    benefits . . . 'is not supported by substantial evidence or is based on legal error.'"

12    *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014)

13    (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  "'Substantial

14    evidence' means more than a mere scintilla, but less than a preponderance; it is such

15    relevant evidence as a reasonable person might accept as adequate to support a

16    conclusion."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (quoting

17    *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also*

18    *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court "must consider the

19    entire record as a whole, weighing both the evidence that supports and the evidence

20    that detracts from the Commissioner's conclusion, and may not affirm simply by

21    isolating a specific quantum of supporting evidence."  *Garrison v. Colvin*, 759 F.3d

22    995, 1009–1010 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1035).  "'Where

23    evidence is susceptible to more than one rational interpretation,' the ALJ's decision

24    should be upheld."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting

25    *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).  "If the evidence can support

26    either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its]

27    judgment for that of the ALJ."  *Robbins*, 466 F.3d at 882.

28

## IV.    DISCUSSION

### A.    Disputed Issues

Plaintiff raises two disputed issues:

1.    Whether the ALJ failed to provide clear, convincing, and well-supported reasons for discounting plaintiff's subjective symptom testimony.

2.    Whether the ALJ erred by failing to evaluate the treating medical source opinion of David Dobos, M.D.

(Pl.'s Br. 4.)

For the reasons discussed below, the Court finds that reversal and remand for further administrative proceedings are warranted for Issue One, based on the ALJ's failure to articulate clear, convincing, and well-supported reasons for discounting plaintiff's subjective symptom testimony.  Having found that remand is warranted, the Court declines to address Plaintiff's remaining argument.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

### B.    Applicable Law

When assessing a claimant's credibility regarding subjective symptom testimony or allegations, the ALJ must engage in a two-step analysis.  *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Garrison*, 759 F.3d at 1014 (quoting *Lingenfelter*, 504 F.3d at

5

1035–36).  "In this analysis, the claimant is not required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'"  *Id*. (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'"  *Id*. (quoting *Smolen*, 80 F.3d at 1282).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity.  *Id*. at 1014–15; *see also Robbins*, 466 F.3d at 883 ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").  "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'"  *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).  The ALJ must evaluate "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the claimant's] ability to perform work-related activities for an adult . . . ."  Social Security Ruling 16-3p, 2016 SSR LEXIS 4, at *4 (Mar. 16, 2016).

While the ALJ cannot "delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness," *Trevizo*, 871 F.3d at 678 n.5, the ALJ may consider "prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; . . . unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and . . . the claimant's daily activities," *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Smolen*, 80 F.3d at 1284).  Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant.  *Burrell v. Colvin*, 775 F.3d 1133,

1137–38 (9th Cir. 2014).  In addition, the ALJ may consider "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms . . . ."  *Smolen*, 80 F.3d at 1284.  However, it is improper for an ALJ to reject subjective testimony based "'solely on a lack of objective medical evidence to fully corroborate' the claimant's allegations."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)).

The ALJ must make "a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)); *see Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" (quoting *Bunnell*, 947 F.2d at 345–46)).  Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

### C.    Background

During the August 8, 2023 hearing before the ALJ, Plaintiff testified about his problems and limitations as follows:

Plaintiff was thirty-seven years old.  (AR 28, 44.)  Plaintiff was placed in special education in the second grade and had not obtained his General Education Development degree ("GED") because it was "too hard."  (*Id.* at 50.)

7

Plaintiff suffered from bipolar disorder, depression, and schizophrenia. (*Id.* at 20, 44–45, 48.)  He was diagnosed with these conditions when he was eighteen years old and had taken medication to treat them since that time. (*Id.* at 44–45, 48.)  Plaintiff experienced tactile, auditory, and visual hallucinations of spiders crawling on his body and hostile voices.  (*Id.* at 39, 41, 48–49.)  Plaintiff often felt spiders crawling "in his groin . . . and penis area" as if he was being "sexually assaulted by spiders."  (*Id.* at 49.)  Some days, he felt spiders crawling on him "all day long," and other days, he felt them "maybe just three or four hours maybe two, but it happens every morning, every night, and during the middle of the day."  (*Id.* at 43.)  Plaintiff did not sleep at night and stated that he felt spiders "98 percent of the time" that he tried to sleep.  (*Id.* at 49.)  These symptoms prevented Plaintiff from doing work and homework.  (*Id.*)  He stated that every time he tried to get a job or do his homework, he heard voices talking to him that stopped him from doing these things.  (*Id.*)

Plaintiff previously worked as a driver for Orange Courier for one year, a driver for Pact National Messenger for one year, a telemarketer salesperson for DISH Network for two-and-one-half or three years, in an unstated position at RadioShack for less than one year, and in various jobs for months at a time. (*Id.* at 40.)  As a driver, Plaintiff spent a majority of the workday seated and occasionally lifted fifty-five-pound boxes with the assistance of a wheel device but regularly lifted ten-pound boxes.  (*Id.* at 41–42.)  Plaintiff enjoyed these jobs and stated that he stopped working due to his hallucinations that made him a "hazard on the road."  (*Id.* at 42–44.)  Plaintiff no longer had a driver's license.  (*Id.* at 44.)

Plaintiff lived with his mother who assisted him with his medication and drove him to his treatment.  (*Id.* at 43.)  Plaintiff experienced depression when his mother left the house.  (*Id.* at 49.)  His mother did not work and received social security income.  (*Id.* at 43.)  Plaintiff had no additional income for the last five years.  (*Id.*)  Plaintiff had been treated by psychiatrist Dr. Dobos for at least three

years and as long as five years; Plaintiff could not remember when he started seeing
Dr. Dobos.  (*Id.* at 48.)  Plaintiff received an Invega Sustenna injection and took
Hydroxyurea and Deficol each morning and Zyprexa, Rexulti, and Deficol each
night.  (*Id.* at 46–47.)  These medications made Plaintiff less argumentative but very
tired.  (*Id.* at 47.)  Plaintiff also attended individual therapy once a week and group
therapy, called "Alternative Perceptions" for people that experience hallucinations,
twice a week.  (*Id.* at 48.)  Plaintiff stated that he felt an improvement over the last
few years but still dealt with the hallucinations every day.  (*Id.* at 49.)  Plaintiff
stated that he last used methamphetamine one year and two months or four months
prior to the hearing.  (*Id.* at 45.)

### D.    Analysis

At the first step of the two-step evaluation, the ALJ found that Plaintiff's
"medically determinable impairments could reasonably be expected to cause the
alleged symptoms."  (*Id.* at 23.)  At the second step, however, the ALJ found that
Plaintiff's "statements concerning the intensity, persistence and limiting effects of
these symptoms are not entirely consistent with the medical evidence and other
evidence in the record for the reasons explained in this decision."  (*Id.*)

As the ALJ found no evidence of malingering, she was required to provide
specific, clear and convincing reasons for rejecting Plaintiff's subjective symptom
statements.  *See Garrison*, 759 F.3d at 1014–15.  The Court may review only those
reasons that the ALJ specifically cited as grounds to reject Plaintiff's subjective
symptom testimony.  *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)
("We are constrained to review the reasons the ALJ asserts."); *Garrison*, 759 F.3d
at 1010 ("We review only the reasons provided by the ALJ in the disability
determination and may not affirm the ALJ on a ground upon which he did not
rely.").
///

The ALJ provided three reasons for discounting Plaintiff's subjective symptom testimony: (1) his statements were inconsistent with his failure to follow prescribed treatment that might improve symptoms; (2) his statements were inconsistent with his daily activities; and (3) his statements were inconsistent with other information in the case record. (AR 23–24.)

For the reasons stated below, the ALJ failed to provide a clear and convincing reason based on substantial evidence in the record to reject Plaintiff's subjective symptom testimony.

### 1.    Failure to Follow Prescribed Treatment

A claimant's "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" is a factor that "can cast doubt on the sincerity of the claimant's pain testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v) (providing that an ALJ may consider claimant's treatment for pain or other symptoms in evaluating symptom evidence). However, an ALJ also must "consider and address reasons for not pursuing treatment that are pertinent to an individual's case." SSR 16-3p, 2016 LEXIS 4, at *25; *see also Orn,* 495 F.3d at 638 (noting that an ALJ is required to consider "any explanations that the individual may provide, or other information in the case record, that may explain" the individual's failure to follow a treatment plan). In considering mental health issues, the Ninth Circuit has expressly stated that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Garrison*, 759 F.3d at 1018 n.24. "In other words, we do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions." *Id.*

///

10

1    Additionally, an ALJ may discount a claimant's testimony where evidence

2    shows that his symptoms were under control with treatment. *See Tommasetti*, 533

3    F.3d at 1039–40 (9th Cir. 2008) (holding that a claimant's favorable response to

4    conservative treatment undermined the claimant's reports regarding the disabling

5    nature of his pain); *Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003) (holding

6    that an ALJ "reasonably noted that the underlying complaints upon which her

7    reports of pain were predicated had come under control"); *Warre v. Comm'r of Soc.*

8    *Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be

9    controlled effectively with medication are not disabling for the purpose of

10   determining eligibility for [disability] benefits.") (citing *Odle v. Heckler*, 707 F.2d

11   439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that the

12   claimant's impairments were responsive to medication)).  However, an ALJ may

13   not "pick out a few isolated instances of improvement over a period of months or

14   years and . . . treat them as a basis for concluding a claimant is capable of working."

15   *Garrison*, 759 F.3d at 1017.  In considering mental health issues, the Ninth Circuit

16   has expressly stated "it is error to reject a claimant's testimony merely because

17   symptoms wax and wane in the course of treatment" as "[c]ycles of improvement

18   and debilitating symptoms are a common occurrence." *Id.*

19   Here, the ALJ found that Plaintiff's "failure to follow prescribed treatment

20   that might improve symptoms was inconsistent with the claimant's statements

21   regarding the alleged intensity, persistence, and limiting effects of symptoms."  (AR

22   23.)  Specifically, the ALJ found that Plaintiff "complained of disabling mental

23   health symptoms," but "failed to comply with the treatment in a manner consistent

24   with the alleged complaints."  (*Id.*)  In support of this finding, the ALJ relied on

25   three examples of noncompliance.  *First*, the ALJ cited to a June 8, 2021 Progress

26   Note documenting "partial compliance" with medications and other therapy.  (*Id.* at

27   23, 433.)  *Second*, the ALJ cited to a September 27, 2021, Progress Note

28   documenting that "[w]hile Plaintiff is away from his mother's home, [he] spends

1  time with homeless people and uses street drugs, . . . is not consistent with his

2  mental health services and has not accepted mental health services in the past."

3  (*Id.* at 23, 1052.)  *Third*, the ALJ cited to a March 20, 2023 Progress Note

4  documenting that Plaintiff was "[n]ot using meds."  (*Id.* at 23, 2362.)  Then, the

5  ALJ compared these incidents to periods of compliance and self-reported

6  improvement in July and September 2021 (*id.* at 1266, 1276, 1278, 1724) and

7  January 2023 (*id.* at 2331) and concluded that "[t]his indicates that the alleged

8  intensity and persistence of the claimant's symptoms are inconsistent with the

9  overall evidence of record" (*id.* at 23).

10  The ALJ erred in discounting Plaintiff's subjective symptom testimony based

11  on his purported failure to comply with prescribed treatment.  While the ALJ

12  concluded that Plaintiff did not "offer a sufficient explanation for not complying

13  with prescribed treatment" (*id.*), the ALJ failed to consider possible reasons for

14  Plaintiff's noncompliance.  *See Romero v. O'Malley*, No. 23-5592, 2024 U.S. App.

15  LEXIS 30305 at *3 (9th Cir. Nov. 29, 2024) (finding ALJ erred in discounting

16  claimant's testimony of mental health symptoms because of alleged failure to

17  comply with prescribed medications where ALJ merely concluded that claimant had

18  not "offer[ed] a sufficient explanation for not complying with prescribed treatment"

19  without considering possible reasons based on the record) (alteration in original).

20  Specifically, the ALJ failed to consider whether Plaintiff's noncompliance was

21  symptomatic of his underlying mental health disorders.  Nowhere in the ALJ's

22  decision does she consider whether Plaintiff's decision to not take his medication

23  was, at least in part, the result of his underlying schizoaffective, bipolar, major

24  depressive, or substance addiction disorders.  (*See generally* AR 17–29.)  The Court

25  notes that in each of the Progress Notes to which the ALJ cites, Plaintiff reported

26  hallucinations (*see id.* at 433, 1052, 2362)—the hallmark symptom of his mental

27  delusions that formed the basis of his testimony (*see id.* at 39–50).  The ALJ erred

28  in failing to consider whether this suggests that Plaintiff's failure to comply with

medication was, at least in part, the result of these delusions.  *See, e.g.*, *Taylor v. Colvin*, No. EDCV 12-00819-MAN, 2014 U.S. Dist. LEXIS 38682, at *24 (C.D. Cal. Mar. 24, 2014) ("[E]ven assuming *arguendo* that plaintiff failed to provide good reasons for her noncompliance, plaintiff's inability to follow her treatment may have been symptomatic of her mental impairments and, therefore, does not provide an appropriate basis for discrediting her subjective symptom testimony."); *Butts v. Astrue,* No. CV-10-7295 RNB, 2011 U.S. Dist. LEXIS 61422, at *7 (C.D. Cal. June 8, 2011) (finding that claimant's noncompliance with her treatment plan "could have been symptomatic of the severity of her mental impairments, and therefore does not constitute a clear and convincing reason for not crediting her subjective symptom testimony."); *Clark v. Astrue,* No. CV-09-120-JPH, 2010 U.S. Dist. LEXIS 10210, at *12–13 (E.D. Wash. Feb. 5, 2010) ("[I]t was not appropriate for the ALJ to consider plaintiff's limited mental health treatment as evidence of a lack of a credibility since the failure to follow through with mental health treatment may itself be a symptom of significant mental health problems.").

The ALJ also erred in discounting Plaintiff's subjective symptom testimony based on his purported improvement.  In support of her finding, the ALJ relied on three examples of improvement.  *First*, the ALJ cited to a July 12, 2021 Progress Note documenting Plaintiff's statements that "as long as [he] [was] taking [his] medicine, [he] [was] not having problems" and he was "doing much better" and a July 12, 2021 Mental Status Exam that documented Plaintiff's normal appearance, motor activity, speech, mood, memory, orientation, consciousness, concentration, and memory.  (AR 23, 1266, 1276, 1278.)  *Second*, the ALJ cited to a September 14, 2021 Progress Note documenting Plaintiff's mother's statement that Plaintiff was "doing better with his injectable medicine, that he was not aggressive anymore [and] that the new medication is helping [him] to be calm."  (*Id.* at 23, 1724.)  *Third*, the ALJ cited to a January 23, 2023 Progress Note documenting Plaintiff's ///

1 statement that his close work with psychiatrists and compliance with Rexulti "may
2 be helping him." (*Id.* at 23, 2331.)

3      These Progress Notes do not fairly support the suggestion that Plaintiff's
4 symptoms were under control while under medication. As the ALJ noted, the July
5 12, 2021 Progress Note was created just two weeks after Plaintiff had been
6 hospitalized. (*Id.* at 23, 399.) At best, this supports the suggestion that,
7 immediately following that hospitalization, Plaintiff's condition stabilized with
8 treatment and medication. And the September 14, 2021 Progress Note documented
9 a phone call with Plaintiff's mother, the "purpose" of which was "[t]o assist,
10 encourage, and support [her] ability" to help Plaintiff reach the goal of his treatment
11 plan. (*Id.* at 1724.) Notably, that goal was to obtain one year of sobriety; on
12 September 14, 2021, Plaintiff had achieved just four days of sobriety. (*Id.*) This
13 does not fairly support the suggestion that Plaintiff's sobriety was under control.
14 Further, in isolating Plaintiff's mother's statement, the ALJ ignored the portion of
15 that statement that better describes the broader trend of Plaintiff's symptoms—that
16 Plaintiff had been "in an out of hospitals for many years" and, while he was "doing
17 better after his injectable medicine . . . he had a[n] issue at work yesterday because
18 he got to work late" because "he is not sleeping [un]til 5:00 AM" and "cannot get
19 up [un]til after lunch." (*Id.*) Not only is this consistent with Plaintiff's testimony—
20 that he experienced some improvement but continued to experience fatigue due to
21 lack of sleep while hallucinating—but Plaintiff's decade-long pattern of
22 hospitalization followed by temporary improvement suggests the "waxing and
23 waning" of mental health symptoms that the Ninth Circuit has cautioned
24 adjudicators from erroneously relying upon in discrediting subjective symptom
25 testimony. *Garrison*, 759 F.3d at 1017 ("[I]t is error to reject a claimant's
26 testimony merely because symptoms wax and wane in the course of treatment.").
27      Finally, even assuming Plaintiff's January 23, 2023 statement that Rexulti
28 "*may* be helping him" suggests improvement, the ALJ ignored parts of the record

1   from the same time period suggesting—much more emphatically—that medication

2   had *not* controlled Plaintiff's symptoms.  Most notably, on February 9, 2023—just

3   days after the January 23, 2023 Progress Note was created—Dr. Dobos stated that,

4   "even with being on THREE ANTIPSYCHOTIC MEDICATIONS along with other

5   psychiatric medications [Plaintiff] continues to have severe symptomology

6   affecting his ability to function."  (AR 2318 (emphasis in original).)  Not only does

7   this contradict the ALJ's finding that Plaintiff had improved, but it contradicts her

8   finding that Plaintiff failed to comply with prescribed treatment, and the confluence

9   of both contradictions underscores the error in the ALJ's reasoning.  In relying on

10   some parts of the record—for the assertion that Plaintiff failed to comply with

11   prescribed treatment that *might* improve symptoms—while ignoring other parts of

12   the record—suggesting that, *despite* compliance, Plaintiff's symptoms had *not*

13   improved—the ALJ failed to provide a clear and convincing reason for discrediting

14   Plaintiff's testimony.  *See V.B.B. v Kijakazi*, No. 5:21-cv-01949-SHK, 2022 U.S.

15   Dist. LEXIS 181952, *17–18 (C.D. Cal. Oct. 3, 2022) (finding ALJ erroneously

16   discredited subjective symptom testimony based on noncompliance where ALJ

17   relied on only some evidence that supported rejecting plaintiff's statements but did

18   not address the evidence showing that plaintiff complied with medication during

19   much of the relevant time period but that symptoms persisted).

20       For the reasons stated above, failure to follow prescribed treatment that might

21   improve symptoms was not a clear and convincing reason based on substantial

22   evidence in the record to reject Plaintiff's subjective symptom testimony.

23

24                 2.   Activities of Daily Living

25       An ALJ may consider activities of daily living in evaluating the intensity,

26   persistence, and limiting effects of a claimant's symptoms.  20 C.F.R.

27   §§ 404.1529(c)(3), 416.929(c)(3).  An ALJ properly may reject a claimant's

28   subjective symptom testimony if the claimant's conduct or daily activities are

inconsistent with the claimant's expressed limitations.  *See, e.g.*, *Molina v. Astrue*,
674 F.3d 1104, 1112–13 (9th Cir. 2012); *see Bray v. Comm'r of Soc. Sec. Admin.*,
554 F.3d 1219, 1227 (9th Cir. 2009).  "Even where those activities suggest some
difficulty functioning, they may be grounds for discrediting the claimant's testimony
to the extent that they contradict claims of a totally debilitating impairment."
*Molina*, 674 F.3d at 1113.  A claimant's testimony regarding daily living activities
may undermine a disability claim in two ways:  (1) the activity testimony may
contradict other testimony about severity of symptoms, or (2) the activities show that
the claimant is able to spend a substantial part of his or her day engaged in physical
functions transferable to a work setting.  *See Ghanim*, 763 F.3d at 1165.  However, it
is error to "merely recite[] plaintiff's activities without taking into account [his]
alleged limitations in completing those activities."  *See Robinson v. Berryhill*, No.
ED CV 17-2238-PLA, 2018 U.S. Dist. LEXIS 133911, at *24 (C.D. Cal. Aug. 8,
2018).

Here, the ALJ found that Plaintiff's daily activities were inconsistent with
Plaintiff's subjective symptom testimony by relying on four parts of the record.
*First,* the ALJ cited to a May 19, 2022 Function Report, completed by Plaintiff's
mother, and concluded that Plaintiff "prepared meals, did laundry, shopped in stores,
walked to get around, attended sporting events, and used Zoom to socialize."  (AR
23, 275–286.)  *Second*, the ALJ cited to a July 18, 2022 Department of Social
Services Psychiatric Consultative Examination Report which documented that
Plaintiff had "no difficulty with dressing, bathing, and hygiene."  (*Id.* at 23, 1617.)
*Third,* the ALJ cited to February 3, 2022, March 1, 2022, and March 15, 2022
Progress Notes and found that Plaintiff "was able to live with his mother," "went out
for walks," "engaged in community service work," and "was able to interact in a
group setting and offer support to other members."  (*Id.* at 23, 1912, 1932, 1950.)
*Finally*, the ALJ cited to an August 10, 2022 Progress Note which documented that

Plaintiff "apparently was taking an adult school on-line program to earn his high
school diploma."  (AR 23, 196.)

Plaintiff argues the ALJ ignored Plaintiff's significant limitations in
completing these activities and, regardless, failed to explain how the identified
activities were inconsistent with Plaintiff's allegations of dysfunction.  (Pl.'s Br. 14–
15.)  The Court agrees.

With respect to Plaintiff's personal care, the ALJ ignored several limitations
documented in Plaintiff's mother's Function Report, including but not limited to the
following:  Plaintiff could dress and bath himself, but wore "mismatched clothing
inside out, excessively bath[ed], [did] not care about [his] hair," and Plaintiff's
mother had to remind Plaintiff "half the time to wear shoes"; Plaintiff could prepare
"frozen dinners at times or heat up leftovers" in the microwave, but "left the stove
burners on . . . even with [a] beep reminder" such that Plaintiff's mother "did not
trust" him to use the stove; Plaintiff could do laundry, but would leave clothing in
the washer or dryer and needed to be reminded of next steps; Plaintiff went outside,
but only "to [the] backyard or [on] walks sometimes"; Plaintiff could shop, but only
for "one item" and "not a list."  (AR 280–82.)  With respect to Plaintiff's social
activities, the ALJ ignored similar qualifying statements.  Plaintiff's mother stated
that Plaintiff attended baseball games two times per months during the baseball
season, but that Plaintiff had generally "lost interest in sports" and is "reclusive."
(*Id.* at 283.)  With the exception of these occasional baseball games, Plaintiff's
mother listed "engag[ing] in Zoom talks" as Plaintiff's only social activity.  (*Id.*)
Further, the Court sees no clear contradiction between, on the one hand, Plaintiff's
ability to complete basic household chores and attend occasional social events and,
on the other hand, the limiting effects of his symptoms.  *Ghanim*, 763 F.3d at 1165
(finding "daily activities, which included completing basic chores, sometimes with
the help of a friend, and attending occasional social events" did not support ALJ's
adverse credibility of determination).

1          With respect to Plaintiff's community service and group therapy, the ALJ

2    mischaracterized the record.  The Progress Notes documented that Plaintiff attended

3    group therapy sessions, the purpose of which was to "give and receive support from

4    others experiencing" symptoms of schizophrenia and related disorders through the

5    "opportunity for socialization and to practice new social skills."  (AR 1912.)  At the

6    February 2, 2022 session, Plaintiff "provided supportive listening to other group

7    members" and shared that "he is required to do community service and will be doing

8    so at the animal shelter."  (*Id.*)  At the March 1, 2022 session, Plaintiff stated, "I'm

9    doing ok, I'm just here for the support today."  (*Id.* at 1932.)  Plaintiff "participated

10   in the group[,] interacted with other members," and shared that he was experiencing

11   symptoms but "able to go to his community service work at the animal shelter."

12   (*Id.*)  At the March 15, 2022 session, Plaintiff shared that the community service

13   "gave him purpose," "spoke about the importance of belonging," and "interacted

14   with the other group members and was supportive."  (*Id.* at 1050.)  Because the ALJ

15   omits the fact that Plaintiff's "interaction" with others was the very purpose of his

16   treatment and "engagement" in community service was required and related to such

17   treatment, an adverse credibility finding based on such characterization was

18   erroneous.  *See Rawa v. Colvin*, 672 Fed. App'x 665, 666 (9th Cir. 2016) (finding

19   that that ALJ mischaracterized plaintiff's level of activity because it omitted "a

20   number of salient and dispositive facts and details, and thus concluding that "[s]uch

21   an inaccurate representation of the record can not constitute a specific, clear, and

22   convincing reason for rejecting [the plaintiff's] testimony.").  In fact, the ALJ's

23   finding that Plaintiff's participation in these rehabilitative services—*i.e.*, his daily

24   activities—undermined his testimony is, at the very least, inconsistent with her

25   finding that Plaintiff's insufficient participation in such services—*i.e.*, his failure to

26   comply with prescribed treatment—also undermined his testimony.

27          Finally, with respect to Plaintiff' schooling, the ALJ cites to nothing in the

28   record indicating that Plaintiff's participation exceeded the activity to which he

1  testified—namely, that Plaintiff attempted to obtain his GED but could not

2  successfully do so because it was "too hard."  (AR 50.)

3      For the reasons stated above, Plaintiff's daily activities were not a clear and

4  convincing reason based on substantial evidence in the record to reject Plaintiff's

5  subjective symptom testimony.

6

7          3.    Objective Medical Evidence

8      Defendant contends that the ALJ "reasonably observed that numerous

9  objective findings showed that Plaintiff's alleged limitations were not as drastic as

10  he alleged."  (Def.'s Br. 12.)  Plaintiff argues the ALJ "fail[ed] to explain with any

11  specificity how such findings undercut the many other objective findings in the

12  record substantiating Plaintiff's alleged dysfunction due to his pervasive

13  hallucinations and mental symptoms."  (Pl.'s Br. 7.)

14      Even if the objective medical evidence did not corroborate Plaintiff's

15  subjective allegations, lack of objective medical evidence is a legally insufficient

16  reason on its own to discount Plaintiff's symptom testimony.  *See, e.g., Bunnell*,

17  947 F.2d at 345 ("[A]n adjudicator may not reject a claimant's subjective

18  complaints based solely on a lack of objective medical evidence to fully corroborate

19  the alleged severity of pain."); *Robbins*, 466 F.3d at 883 ("While an ALJ may find

20  testimony not credible in part or in whole, he or she may not disregard it solely

21  because it is not substantiated affirmatively by objective medical evidence.").  Here,

22  even assuming the record supports the ALJ's reasoning regarding the lack of

23  support from objective medical evidence, the ALJ did not identify any other clear

24  and convincing reason, supported by substantial evidence, to discount Plaintiff's

25  subjective symptom statements.  Standing alone, the purported lack of support from

26  objective medical evidence is not a legally sufficient reason to discount Plaintiff's

27  symptom testimony.

28  ///

1                                                 * * *

2      In sum, the ALJ's decision does not provide specific, clear, and convincing

3 reasons for rejecting Plaintiff's subjective symptom testimony. Reversal is

4 warranted.

5

6      **E.**    **Remand for Further Proceedings**

7      The decision whether to remand for further proceedings or order an

8 immediate award of benefits is within the district court's discretion. *See Harman v.*

9 *Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Where no useful purpose would be

10 served by further administrative proceedings, or where the record has been fully

11 developed, it is appropriate to exercise this discretion to direct an immediate award

12 of benefits. *See id*. at 1179 ("[T]he decision of whether to remand for further

13 proceedings turns upon the likely utility of such proceedings."). However, where,

14 as here, the circumstances of the case suggest that further administrative review

15 could remedy the Commissioner's errors, remand is appropriate. *See McLeod v.*

16 *Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). Specifically, remand is warranted here

17 for reconsideration of Plaintiff's symptom statements because the ALJ's failure to

18 provide legally sufficient reasons for discounting such statements in the decision

19 prevents this Court from meaningfully determining whether the decision is

20 supported by substantial evidence. *See Treichler*, 775 F.3d at 1103 ("Because 'the

21 agency's path' cannot 'reasonably be discerned,' we must reverse the district

22 court's decision to the extent it affirmed the ALJ's credibility determination."

23 (citation omitted)).

24 ///

25 ///

26 ///

27 ///

28 ///

1

## V.    ORDER

The Court **ORDERS** that judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings.

**IT IS SO ORDERED.**

DATED: January 6, 2026

_____

HONORABLE MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE